439 P.2d 811

Olive V. GENDA, Petitioner,

v.

SUPERIOR COURT, State of Arizona, COUNTY OF PIMA and Judge Robert Roylston; and F. H. Genda, real party in interest, Respondents.

No. 9150–PR.

Supreme Court of Arizona, In Banc.

April 17, 1968.

Rees, Estes & Browning, Tucson, for petitioner.

Cusick, Watkins & Stewart, Tucson, for respondents.

UDALL, V. C. J.

This case is before us on a petition for review of the decision of the Court of Appeals, Division Two. Whether the Appeals Court erred in denying petitioner's petition for writ of certiorari is the sole issue for us to decide.

The petition for writ of certiorari is based upon the following: Petitioner Olive V. Genda was granted a decree of divorce by the Pima County Superior Court on March 23, 1961. Expressly approved and incorporated in the judgment was a property settlement agreement entered into by petitioner and her husband, respondent F. H. Genda, dated September 1, 1960. Among other things, the agreement provided that

"Husband shall pay, by way of support * * * the amount of ONE HUNDRED FIFTY DOLLARS ($150.00) per month until such time as the younger child, NED GENDA, shall attain the age of twenty-one (21) years; provided, that due to the infirm physical condition of NED GENDA, there shall be a medical evaluation of his condition upon his attaining majority; and if he is unable to support himself, support payments shall continue * * *.

        *    *    *    *    *    *

"* * * the parties hereto agree that they shall be bound forever by all the terms of this Agreement * * *.

        *    *    *    *    *    *

"The parties further covenant and agree that all the provisions hereof shall be controlled by and interpreted under the laws of the State of Arizona. * *"

When Ned Genda attained the age of twenty-one years on September 7, 1966, respondent refused to make continued support payments or to agree to any. Petitioner filed a "Motion for Costs and Memorandum in Support Thereof", and an order to show cause was issued by the court.

Respondent thereafter moved to dismiss or quash the order. At the hearing on the order to show cause, the testimony of Dr. Mericle, an Indiana resident but vacationing in Tucson on the date of the hearing, March 30, 1967, was taken by stipulation of counsel. Dr. Mericle testified that the petitioner, the respondent and Ned Genda are all residents of the State of Indiana—respondent residing in Frankfort and petitioner, Ned Genda, and Dr. Mericle residing in Indianapolis, Indiana, which towns are less than fifty miles apart. The doctor's testimony indicated a substantial probability that Ned Genda was unable to care for himself. Upon conclusion of the hearing, the trial court found that it lacked jurisdiction in the matter and granted respondents motion to dismiss.

In support of her claim that she had no plain, speedy and adequate remedy at law other than certiorari, petitioner alleged that because of a severe physical disability, she is unable to work enough to fully support her son Ned; that respondent is capable and actually earning substantial sums; that because of Ned's mental retardation he requires close custodial support; that the delay resulting from an appeal or a new lawsuit in Indiana for support payments will result in petitioner's inability to provide a suitable home and necessary care for Ned; and that a speedy and inexpensive conclusion of the matter can be had in Arizona.

Initially the question for us to decide is whether the extraordinary writ of certiorari will lie to review the decision of the lower court that it lacks jurisdiction to hear the matter.

A.R.S. § 12–2001 provides:

"The writ of certiorari may be granted by the supreme and superior courts or by any judge thereof, in all cases when an inferior tribunal, board or officer, exercising judicial functions, has exceeded its jurisdiction and there is no appeal, nor, in the judgment of the court, a plain, speedy and adequate remedy."

■ This Court has not infrequently restated the rule expressed by the statute that a writ of certiorari may be employed when an inferior tribunal has exceeded its jurisdiction and there is no appeal, nor a plain, speedy and adequate remedy available. State ex rel. Ronan v. Superior Court, 95 Ariz. 319, 390 P.2d 109 (1964); State ex rel. Mahoney v. Stevens, 79 Ariz. 298, 288 P.2d 1077 (1955); Commercial Life Ins. Co. v. Wright, 64 Ariz. 129, 166 P.2d 943 (1946).

Traditionally, it was the practice of this Court to issue certiorari only to test jurisdiction and not to determine whether it was erroneously exercised. Ward v. Stevens, 86 Ariz. 222, 344 P.2d 491 (1959); Hazard v. Superior Court, 82 Ariz. 211, 310 P.2d 830 (1957); State ex rel. Andrews v. Superior Court, 39 Ariz. 242, 5 P.2d 192 (1931). More recent cases, however, reflect a more liberal approach to the issuance of extraordinary writs, with our primary concern to see that essential justice is done in the individual case.

■■ Guidelines which will be followed were set out in the case of Caruso v. Superior Court, 100 Ariz. 167, 412 P.2d 463 (1966). Although it involved a writ of prohibition issued by this Court, the principles espoused are likewise applicable to its twin writ of certiorari. We said:

"A writ of prohibition is appropriate if the other remedies are not *equally* plain, speedy and adequate. Of course, there is expense and delay in being put to a trial and then an appeal. But these facts *alone* will not justify issuing the writ." (Emphasis supplied.) 100 Ariz. at 171, 412 P.2d at 466.

And, again:

"It is clear that the propriety of granting the writ depends upon the facts of each case. *The guiding principle must be our obligation to see that essential justice is done.*" (Emphasis supplied.) 100 Ariz. 172, 412 P.2d 466.

See Lesher, Extraordinary Writs, 7 Ariz. Law Review 34 (1965), and also Bernstein, Prologue. and Smith, Certiorari, Extra-ordinary Writs in Arizona, Arizona Law Institute, March, 1967.

Similarly, in State ex rel. Ronan v. Superior Court, supra, which involved a petition for prohibition by the county attorney but treated as certiorari, we stated:

"At both common law and under a statute similar to A.R.S. § 12–2001, and taken from California as was our statute, a writ of certiorari may be used to review abuse of discretion." 95 Ariz. at 322, 390 P.2d at 111.

And citing State Board of Medical Examiners v. Spears, 79 Colo. 588, 247 P. 563, 54 A.L.R. 1498; error dismissed, 275 U.S. 508, 48 S.Ct. 158, 72 L.Ed. 398, we quoted the Colorado Supreme Court where it said:

" ' * * * If the court abused its discretion, *or failed regularly to pursue its authority,* which has the same meaning, the reviewing court might examine the evidence bearing on jurisdiction or abuse of discretion, but not with a view to determine facts or draw conclusions therefrom * * *.' " (Emphasis added.) 247 P.2d at 564–565.

The rule that certiorari will not lie where there is an appeal has also been relaxed. See, State ex rel. Corbin v. Superior Court, 100 Ariz. 236, 413 P.2d 264 (1966) and Carpenter v. Superior Court, 101 Ariz. 565, 422 P.2d 129 (1966).

■ In the instant case, the issue to be determined is whether the trial court abused its discretion in refusing to hear or accept jurisdiction of the matter, and not that it exceeded its jurisdiction—it refused to pursue the power it did have. For either purpose, certiorari is not an inappropriate, vehicle to obtain relief provided other remedies are not equally plain, speedy and adequate, and that essential justice will be done. We are satisfied the facts alleged by petitioner and heretofore set forth meet these requirements.

■ Having concluded that certiorari is an appropriate remedy in this action, the issues next raised regard the obligations of a father to support or contribute to the

support and maintenance of his natural child who is over the age of twenty-one years, has not married, lives with his mother, and from birth has been mentally and physically unable to support or care for himself. They are issues of first impression in Arizona and we conclude them as follows:

The great bulk of jurisdictions that have considered the question, whether based upon local statutes or upon a modern judicial expansion of the common law, recognize a duty imposed upon a parent to support his incapacitated child even beyond the age of majority. If the child is of weak body or mind, unable to care for itself after coming of age, the parental rights and duties remain practically unchanged, and the parents' duty to support the child continues as before. See Annotation, 1 A.L.R.2d 912, and cases at 921.

The obligation imposed upon parents for support of a minor child arises in the first instance because the child itself is unable to so provide. When a child has reached the age of majority, the law presumes that he is in a condition to provide for his own maintenance. If upon reaching the age of majority the child is so defective in mind or body as to be incapable of providing his own maintenance, the presumption is rebutted, and the status of the child remains unchanged.

■ The method of enforcement of a father's obligation of support for incapacitated adult children presents an entirely different question. The general rule is that a court in a divorce or separation suit is without power to provide for the support of, or aid to, an adult child of the parties, or to continue a provision for support after a child attains his majority. Annotation, 162 A.L.R. 1084. See, also, McVey v. McVey, 60 Ariz. 380, 137 P.2d 971 (1943).

Even in those cases where the adult child is physically or mentally incapacitated to provide for his own maintenance, the authorities quite consistently hold that the equity court in a divorce action or supplemental proceeding is without authority to provide for such adult child's support, in the absence of statutory authority or contract. Reynolds v. Reynolds, 274 Ala. 477, 149 So.2d 770 (1961); Murrah v. Bailes, 255 Ala. 178, 50 So.2d 735 (1951); Borchert v. Borchert, 185 Md. 586, 45 A.2d 463, 162 A.L.R. 1078 (1946); Beilstein v. Beilstein, 61 N.E.2d 620, 31 Ohio O. 116 (1945). Cf. Fincham v. Levin, 155 So.2d 883 (Fla.1963).

■ Without belaboring this opinion with the many factual situations presented in other jurisdictions, our conclusion is that the trial court here in a proceeding supplemental to the original divorce action, had jurisdiction to hear the matter. Our decision is based upon the contractual agreement of the parties rather than upon any statutory provision authorizing such jurisdiction. Indeed, the jurisdiction of the superior court to dissolve a marriage extends only to "make * * * provision for the minor children * * *."[1]

1. "25–319.

"A. In the final judgment of divorce the court may, in addition to division of the common property of the parties or in lieu thereof, direct the husband to pay to the wife such amounts as are necessary for support and maintenance of the wife and minor children of the parties whose custody is awarded to the wife, as may be necessary or proper. The court may adjudge that the amount be paid in one sum or in installments. In the judgment, or in a judgment of the annulment, the court may make such disposition of and provision for the minor children as is most expedient under all circumstances for their present comfort and future well-being."

Compare, however, § 25–321 which makes no reference to "minor" children:

"25–321.

"The court may from time to time after entry of final judgment, on petition of either party, amend, revise and alter the portions of the decree which relate to payment of money for the support and maintenance of the wife or the expenses of the proceedings, as may be just, and may amend, change or alter any provision of the judgment respecting the care, custody or maintenance of the children of the parties as circumstances of the parents and welfare of the children require."

Analogous to the instant case is Robrock v. Robrock, 167 Ohio St. 479, 150 N.E.2d 421 (1958). In that case a valid agreement was entered into and incorporated into a divorce decree obligating the father to provide a college education for his children and to keep in effect insurance policies on his life in which the children were beneficiaries. The Supreme Court of Ohio held that the decree became binding upon the husband even though the performance required may extend beyond the minority of the children. See also Miller v. Miller, 154 Ohio St. 530, 97 N.E.2d 213 (1951).

 It should be remembered that the standards to be applied in a divorce proceeding are those of the equity court—we have long recognized that such are considered equitable actions. Crook v. Crook, 80 Ariz. 275, 278, 296 P.2d 951, 58 A.L.R. 2d 352 (1956); Wood v. Wood, 76 Ariz. 412, 418, 265 P.2d 778 (1954); Schwartz v. Durham, 52 Ariz. 256, 264, 80 P.2d 453 (1938). Having incorporated the agreement of the parties into the divorce decree, the jurisdiction of the superior court continued to enforce the decree and to do full and complete justice between the parties.

The judgment of the Superior Court was that "it lacks jurisdiction in this matter at the present time," and in her motion for rehearing to the Court of Appeals petitioner concluded by stating that "all we ask is that *this* Court tell the lower court it had jurisdiction to decide the case before it." Our conclusion is that the lower court did have jurisdiction; that its jurisdiction did not terminate when Ned Genda attained the age of twenty-one by reason of the contractual agreement which was incorporated into the decree of divorce. The merits of petitioner's claim for support were not argued on this application for writ of certiorari. Whether the agreement of the parties was efficacious in creating an enforceable obligation upon the respondent or whether in a hearing petitioner can show that the son is incapable of supporting himself are questions yet to be presented to and determined by the trial court.

The judgment of the Court of Appeals, Division Two, is vacated. The petition for writ of certiorari is granted and the case is remanded for further proceedings not inconsistent with this opinion.

McFARLAND, C. J., and STRUCK-MEYER, BERNSTEIN and LOCK-WOOD, JJ., concur.